IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 15 CV 3063 |
| PATRICK WALSH and COLLEEN WALSH, | ) ) ) | Judge Joan H. Lefkow |
| Defendants. | ) ) ) ) | |

**OPINION AND ORDER**

The Travelers Home and Marine Insurance Company filed this declaratory judgment action to determine whether it has a duty to indemnify under a homeowner's insurance policy it issued to Patrick and Colleen Walsh. Cross-motions for summary judgment are pending, and the parties agree that the case can be resolved on the issue of whether the Walshes' loss was caused by a "collapse" as that term is defined in the policy. If so, Travelers is liable. The material facts are agreed. For the reasons stated below, the motion of Travelers is granted and the motion of the Walshes is denied.[1]

---

[1] The court's jurisdiction rests on diversity of citizenship, as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. §1332(a). Venue is proper in this district as the defendants reside and the Dwelling is located within the Northern District of Illinois. See 18 U.S.C. § 1391(b)(1),(2). The court applies the well-established method of evaluating a motion for summary judgment by construing the facts in a light most favorable to the non-movant so as to determine whether there is a genuine issue of material fact that must be tried to jury. See Fed. R. Civ. P. 56; *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986). Because the parties agree that a single issue resolves the case, the court views the facts in a light favorable to the Walshes. *See Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). It is unnecessary to treat the motions separately.

1

**AGREED FACTS**

As set out in the Joint Statement of Material Facts (dkt. 28), Travelers issued to the Walshes a homeowners insurance policy, effective from May 21, 2014 to May 21, 2015 (the Policy), providing certain coverage for loss and damage to the Walshes' house located on West Catalpa Avenue in Chicago (the Dwelling).

The Dwelling was a one-and-one-half story brick bungalow built in the late 1920s. In 2014, the Walshes engaged a contractor to build a second story addition above the existing Dwelling and a two-story addition off the rear. After the work started, the Walshes agreed with the contractor to expand the project to lowering the existing basement floor to be level with the basement floor of the rear addition. The Walshes temporarily moved out of the Dwelling and intended to return after the construction was completed.

In August 2015, as a result of the contractor's malfeasance, the foundation of the Dwelling was compromised, failed, and cracked, rendering the Dwelling structurally unsound and unsafe, both for use as a dwelling and for the completion of the project. Specifically, the west brick wall laterally displaced[2]; the first story floor/basement ceiling (including joists) sloped downward towards the west wall, and the second story floor moved. Cracks in the mortar and large gaps or separations opened—some through which daylight was visible—between the bricks and between bricks and window framing on the west wall, and there were cracks in the mortar and large gaps or separations between the bricks on the east wall. Cracks on interior walls, ceiling and archways were also observed. No wall had fallen over to the ground, however,

---

[2] The Walshes describe the wall as curved and serpentine, but the photographs referenced (JSOF, Exh. B) do not substantiate this assertion. (Dkt. 28-2) The fact is not material, in any event.

and no one observed that anything had come off the Dwelling and fallen to the ground, such as bricks. Soon after observing these conditions, the contractor jacked and shored the west side of the Dwelling in order to support the load of the Dwelling, and he manually removed the bricks which had comprised the west exterior wall.[3]

## ANALYSIS

The Illinois Supreme Court applies the following rules of construction of insurance policy provisions:

> The construction of an insurance policy and its provisions is a question of law. A court must determine the intent of the parties when construing the policy. To determine the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract. A policy term is not ambiguous because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning. In addition, a court cannot read an ambiguity into a policy just to find in favor of the insured. A policy provision is ambiguous only if it is subject to more than one reasonable interpretation. If a policy provision is unambiguous, however, a court must give the words of the provision their plain, ordinary and popular meaning.

*Lapham-Hickey Steel Corp.* v. *Protection Mut. Ins. Co.*, 655 N.E.2d 842, 846, 166 Ill. 2d 520, 211 Ill. Dec. 459 (1995) (internal citations and quotation marks omitted). Where the terms of a contract are clear, the court must ascertain the parties' intent solely from the language of the agreement. *Commonwealth Ins. Co. v. Stone Container Corp.,* No. 99 C 8471, 2002 WL

---

[3] The Walshes assert additional facts that do not dispute the agreed facts set out above but describe the events in different terms, such as that the west wall "fell down" rather than moved downward or sloped. Patrick Walsh testified that the west wall was no longer "standing" because it was not level and upright. Colleen Walsh testified that the house is not "standing" because it is not level. Patrick Walsh testified that the west wall "caved inward and downward," although he conceded that the structure is still standing. The Walshes also proffer facts concerning actions of Travelers' insurance adjuster, but because these facts are not material to the disposition of the motions, they are not set out here. To the extent the Walshes assertions are inconsistent with the stipulated facts set out above, they must be disregarded. The additional facts, in any event, do not create a genuine issue of material fact because the interpretation of the meaning of an insurance policy and its provisions is a question of law.

31833862, at *4 (N.D. Ill. Dec. 16, 2002), citing, *inter alia*, *LaSalle Natl. Trust, N.A.* v. *ECM Motor Co.*, 76 F.3d 140, 144–45 (7th Cir. 1996). But if the terms are ambiguous, the court may refer to extrinsic evidence to determine intent. *Commonwealth Ins.* 2002 WL 31833862 at *4.

The Policy covers loss from collapse of all or part of the Dwelling resulting from the use of defective material or methods during construction, remodeling or renovation of the Dwelling. It defines "collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied[.]"[4] Excluded from "a state of collapse," however, is "a building or any part of a building that is in danger of falling down or caving in"; a part of a building that is standing, "even if it has separated from another part of the building"; and a building or any part of a building that is standing "even if it shows evidence of cracking, bulging, sagging, bending, leaning settling, shrinkage or expansion."

Two Illinois Appellate Court decisions have addressed "collapse" under a homeowners policy, both of which liberally construe the term. In *Indiana Ins. Co.* v. *Liaskos*, 697 N.E.2d 398, 297 Ill. App. 3d 569, 231 Ill. Dec. 844 (1998), the court adopted the "modern view" that the term "is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building" and "does not require complete destruction or falling in of the building or a part thereof nor would it require that the loss result from a sudden catastrophic occurrence." *Id*. at 404 (internal citations omitted). In *Gulino* v. *Economy Fire & Cas. Co.*, 971 N.E.2d 522, 2012 IL App. (1st) 102429, 361 Ill. Dec. 420 (2012), the court defined "entire collapse of a building" to include "caving in," meaning "to fall in or down esp[ecially] from being undermined.'" *Id.*at ¶ 18 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 357 (1981)). The court reasoned that

---

[4] The parties agree that the loss incident was abrupt and caused the property to be uninhabitable.

"caving in" "connotes the undermining of a structure that can be something less than a complete falling down." *Id.*

After *Liaskos* and *Gulino*, and until the Illinois Supreme Court decides differently,[5] the legal meaning of "collapse" in a homeowners policy, disregarding the exclusions, is the sudden impairment/undermining of a structure even if the structure has not completely fallen down. If this view is adopted, the Dwelling would be in a state of collapse.

The Policy, however, has one additional exclusion from coverage that was not present in the policies addressed in *Liaskos* and *Gulino.* The Policy does not cover a loss from a collapse if the building remains standing, even if cracked, bulging, sagging, bending, leaning, settled, shrunk or expanded. Travelers argues that this difference in policy language distinguishes the instant case from *Liaskos* and *Gulino*, citing cases from other jurisdictions in support. The Walshes argue that the court should adopt the holding of *Kings Ridge Community Ass'n, Inc.* v. *Sagamore Ins. Co*., 98 So. 3d 74 (Fl. App. 2012), that the term "standing" is ambiguous and should be construed to include a situation where a building or part of a building has significantly dropped in height or elevation from its previous level.

In *Kings Ridge*, eleven roof trusses supporting a wing of a structure failed, causing the roof above the trusses and a drop ceiling below the trusses to deflect downward twelve inches. *Id.* at 78. The court found that the term "standing" means "upright on the feet or base; remaining at the same level, degree, or amount for an indeterminate period." *Id.* (quoting MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1216 (11th ed. 2008)). It concluded that, after the loss

---

[5] This court is not bound by the appellate court decisions if it has good reason to think the Illinois Supreme Court would reject the appellate court's interpretation of Illinois law. *U.S. Fid. & Guar. Co*. v. *Open Sesame Child Care Ctr.*, 819 F. Supp. 756, 759 (N.D. Ill. 1993). It is unnecessary here to consider whether *Liaskos* or *Gulino* would be rejected by the Supreme Court.

incident, the trusses, roof, and ceiling, were no longer upright on their base, no longer at the same level, degree, or height as before, and therefore not standing.

Travelers cites cases contrary to *Kings Ridge*. In *Residential Management (N.Y.) Inc*. v. *Fed. Ins. Co*., 884 F. Supp. 2d 3 (E.D.N.Y 2012), the court ruled that a water tank and its steel support frame that, although leaning, had not fallen over or caved in, was excluded from "collapse" under the policy because it was standing. In *Rector St. Food Enterprises, Ltd*. v. *Fire & Cas. Ins. Co. of Conn*., 35 A.D.3d 177, 178, 827 N.Y.S.2d 18 (2006), the court ruled that a building that had to be demolished or made safe because it had two-to-three-inch-wide cracks in its façade and was sinking, out of plumb, and leaning, was "indisputably standing in the hours before its demolition," so the loss was not covered. In *Mount Zion Baptist Church of Marietta* v. *GuideOne Elite Ins. Co*., 808 F. Supp. 2d 1322, 1325 (N.D. Ga. 2011), the court ruled that, where a church sanctuary that had outwardly bowed sidewalls and a sagging roof, but the building and its components were still standing, there was no collapse under the policy.

The Policy, read as a whole, demonstrates that Travelers intended (the Walshes had no part in drafting the Policy) to cover only a peril in which the building loses its character as a building, similar to the law of Illinois before *Liaskos* adopted the "modern view" of collapse.[6] The use of the term "a building that is standing," in its ordinary meaning is not ambiguous. It

---

[6] *See Liaskos*, 697 N.E.2d at 403 (citing *Rubenstein* v. *Fireman's Fund Ins. Co*., 90 N.E.2d 289, 291, 339 Ill. App. 404 (1950) ("In the cases wherein the peril 'collapse of building' has been construed by the courts in various types of policies of insurance, it has been held that the entire building must lose its distinctive character as a building before there is a collapse of the building within the terms of the policy.") (internal citations omitted). Because collapse of a *part* of a building is covered by the Policy, one might wonder what must be shown to demonstrate coverage where part has collapsed and part is standing. Fortunately, that issue is not before this court.

means erect, in place on its foundation. Even if one refers to the dictionary, as in *King's Ridge*, to resolve the meaning of the term "standing," it means the same. In *King's Ridge*, the court adopted a dictionary definition of "standing" as (1) "upright on its base" and (2) "remaining at the same level, degree, or amount for an indeterminate period." Reference to the online version of MERRIAM-WEBSTER'S definition of "standing," however, reveals that the second meaning of standing cited in *King's Ridge* refers to "a standing offer" or "a standing joke," which has no relevance here. "Standing" in the policy means, as stated in *King's Ridge,* "upright on the base," or, similarly, "upright on the feet or in place." WEBSTER'S THIRD, *supra*, 2224. A house that is cracked but still upright on its base is standing; a part of a house that has dropped downward but is still upright is standing. To give the term the strained meaning the Walshes advance is simply unreasonable. Because it is undisputed that the Dwelling, including the west wall, remained upright on its foundation after the loss incident, the loss is excluded from coverage of a collapse.

**ORDER**

For the reasons stated above, the motion of The Travelers Home and Marine Insurance Company for summary judgment (dkt. 26) is granted. The cross motion of Patrick Walsh and Colleen Walsh for partial summary judgment (dkt. 29, 31) is denied. The Clerk is directed to enter judgment in favor of plaintiff. The case is terminated.

Enter: March 14, 2017  _____

U.S. District Judge Joan H. Lefkow